# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

April 29, 2020

*Via ECF*
The Honorable Andrew L. Carter, Jr.
United States District Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *Ricciardelli v. Patina Restaurant Group, LLC, et al.,*
     Docket No.: 19-cv-6450 (ALC)

Dear Judge Carter:

  As the Court knows, we represent the Plaintiff, Vincent Ricciardelli ("Plaintiff"), in this single-plaintiff wage and hour action against his former employers, Patina Restaurant Group, LLC, and Rapera, LLC, and Delaware North Companies, Incorporated (together, where appropriate, as "Defendants"), (Defendants, together with Plaintiff, as "the Parties"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). As the Court also knows, on September 24, 2019, the Court so-ordered the Parties' stipulation staying this matter pending arbitration in accordance with the Parties' Dispute Resolution Agreement ("ADR Agreement"). ECF 13. We write now, on behalf of the Parties, to advise the Court that the Parties have reached a settlement, which they have reduced to a formal written agreement ("Agreement"), and to request that the Court enter an order lifting the stay, a proposal for which is attached hereto as **Exhibit A**. We further write to explain the terms of the Parties' settlement with respect to Plaintiff's FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] A copy of the Parties' Agreement is attached hereto as **Exhibit B**.

---

[1] Plaintiff also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF 32, at 2 n.1

**I.      Procedural History and Settlement Agreement Terms**

On July 11, 2019, Plaintiff filed this action on behalf of himself and all others potentially similarly-situated, against Defendants - - three nominally distinct entities that Plaintiff alleged together operate as a single enterprise to run the Grand Tier Restaurant - - for whom he claims to have worked as a salaried sous chef from November 1, 2017 until on or about April 23, 2018. In his Complaint, Plaintiff seeks, *inter alia*, unpaid overtime wages based on Defendants' allegedly misclassifying him as exempt from the FLSA's overtime requirement. On August 22, 2019, defense counsel brought to the undersigned's attention the Parties' ADR Agreement, and the Parties' subsequently agreed to stay this litigation pending arbitration, which the Court so-ordered on September 24, 2019. Thereafter, pursuant to the ADR Agreement, the Parties agreed to mediate this matter with Stephen Sonnenberg, Esq. Prior to mediation, the Parties exchanged informal written discovery. On November 25, 2019, the Parties participated in an all-day mediation with Mr. Sonnenberg, but were unable to resolve Plaintiff's claims at that time. On December 16, 2019, Mr. Sonnenberg made a mediator's proposal, which resulted in a settlement being reached in principle on December 20, 2019.

Specifically, the Parties agreed on a total settlement of $45,000.00 ("Settlement Sum"), which will be distributed as follows:

- Plaintiff Ricciardelli: the net amount (excluding attorneys' fees and costs) of $29,705.58; *and*

- Borrelli & Associates, P.L.L.C.: $15,294.42, representing litigation costs ($463.90) and attorneys' fees ($14,830.52), the latter of which is one-third of the *net* Settlement Sum *after* deduction of costs.

The Settlement Sum will be paid in a single payment within thirty days of the Court's approval of the Parties' Settlement and dismissal of this matter. For the reasons described below, Plaintiff, on behalf of all Parties, respectfully submits that this amount and allocation is fair and reasonable under the circumstances and requests that the Court approve it.

---

(S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement.").

**II.     The Agreement is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010) (citation omitted) (Carter, *J*.). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020) ("District Courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky* . . ."); *see also Mei Xing Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395, 413 (2d Cir. 2019)(referring to the *Wolinksy* factors examined as part of a district court's fairness review under *Cheeks*). The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

   **A.     *Range of Possible Recovery***

Here, Plaintiff alleges that Defendants misclassified him as exempt from overtime when he worked as a sous chef from on or around November 1, 2017 until on or about April 23, 2018, and that he worked sixty-eight and one-half hours per week, and further alleges that Defendants paid him a flat salary of $1,153.85 per week without overtime pay for his hours worked beyond his first forty hours each week. In contrast, Defendants assert that Plaintiff's primary duties were managerial and therefore they properly classified Plaintiff as exempt from overtime under the FLSA. Specifically, Defendants assert that Plaintiff was tasked with enforcing and implementing Defendants' policies and had authority to discipline the line cooks that he supervised and that his opinion was considered by Plaintiff's manager when making personnel related decisions, all of which Plaintiff disputes.

Because Defendants did not require Plaintiff to clock-in or out for his shifts, Plaintiff calculated his damages based on his own recollection of what he claimed to be his actual sixty-eight and one-half hour workweek, amounting to $30,477.09, if calculated using a time-and-one-

3

half calculation (i.e., assuming that Plaintiff's salary was solely intended to compensate him for his first forty hours, and not for all hours worked). Defendants continued to maintain that they paid Plaintiff properly, and that even if Plaintiff were successful, Plaintiff's overtime would only be calculated using a half-rate analysis, because in Defendants' view Plaintiff's salary was intended to compensate him for *all* hours worked, regardless of the total number of hours that he worked. Thus, if Defendants' damages argument prevailed, Plaintiff's overtime damages would amount to merely $5,932.28. If Defendants prevailed on their exemption defense, however, Plaintiff would potentially have no damages at all, or even if they did not, perhaps *limited* damages, because Defendants say that they acted in good faith and would thus not be on the hook for liquidated damages.

Accordingly, a realistic range of recovery for Plaintiff's FLSA overtime claims was between zero and $11,864.56 if calculated under a "half-rate" theory of damages, and between zero and $60,954.19 if calculated under a "time and one-half" theory of damages - - both of which are inclusive of liquidated damages. Thus, Plaintiff's range of recovery for *all* FLSA claims was between zero and an absolute maximum of $60,954.19. Under this proposed settlement, after deducting for attorneys' fees and expenses, Plaintiff would receive a total of $34,277.28.

Given the wide range of recovery under the various scenarios described above, and based on his distribution under the Parties' Agreement, after deduction of attorneys' fees and costs, the Parties submit that the outcome here is reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.     *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, formal written discovery and depositions would take place, followed assuredly by dispositive motion practice. Thereafter, if motion practice did not resolve the matter, the Parties were to proceed to an arbitration hearing on the merits with respect to Plaintiff's alleged hours worked and whether Plaintiff was exempt from overtime under the FLSA. At bottom, even if successful at the summary judgment stage and after an arbitration hearing, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum. That is because Plaintiff understands that if he were to continue with the litigation - - even if successful - - he may never receive more money than what Defendants are now offering. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y.

May 18, 2015).  With litigation risks only expected to substantially rise for all Parties, the Settlement Sum is especially fair and reasonable.[2]

### C.  *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over several months, and concluded only after the Parties exchanged informal discovery and conducted a mediation that was then followed up by a mediator's proposal that the Parties accepted.  There was no fraud or collusion here.

Furthermore, the Agreement does not contain any terms that would militate against the Court approving it.  For instance, Plaintiff's release in the Agreement is limited to any wage and hour claims that Plaintiff has or may have had against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Pinguil*, 2018 WL 2538218, at *3-4; *Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180-81 (S.D.N.Y. March 30, 2015).  Likewise, the Agreement does not contain a confidentiality clause or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 96 F. Supp. 3d at 177-78); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks*, 796 F.3d at 206) (this Court declining to approve FLSA settlement containing a confidentiality provision).

### D.  *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336).  When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

---

[2] This is particularly the case here given that the business is a restaurant that has been shuttered because of COVID-19.

5

Here, the portion of the settlement amount attributable to attorneys' fees is $14,830.52, which amounts to one-third of the total net Settlement Sum. While the Second Circuit has very recently emphasized that in most "run of the mill" FLSA cases, "it **does not make sense** to limit fees to 33% of the total settlement," *Fisher*, 948 F.3d at 603-604 (emphasis added), Plaintiff notes that courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-third of the total settlement, which is all that Plaintiff's counsel seeks here. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiff's counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, Plaintiff's counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of April 9, 2020, before finalizing this motion, Plaintiff's counsel has billed 79.6 hours on this file, which amounts to a total lodestar fee of $19,814.00, an amount obviously more than the $14,830.52, fee that counsel seeks. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $295.00 per hour for Caitlin Duffy, Esq., undersigned counsel and lead associate on this matter; $200.00 per hour for a junior associate working on the matter; and $90.00 per hour for paralegal work. Courts routinely approve these rates in similar cases. *See, e.g., In re Murray ex rel. Pryor v. Ambassador Coll. Bookstores, Inc.*, Case No. 2:18-cv-01388-AKT, ECF # 45 (E.D.N.Y. Dec. 13, 2019) ("The thorough and well-reasoned presentation of counsel with regard to the fairness and reasonableness assessment is persuasive. . . [t]he Court . . . finds that . . . [t]he hourly rates in this case . . . fall within the range of reasonable rates within the Eastern District of New York."); *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that "this Court and the neighboring Southern District

of New York have routinely approved these billing rates for Borrelli & Associates"). Plaintiff's counsel's contemporaneous billing records are attached hereto as **Exhibit C**.

Finally, Plaintiff's counsel seeks reimbursement for its out-of-pocket litigation expenses in the amount of $463.90, comprised of: the initial filing fee; postage; research; printing and copying; and PACER fees. Plaintiff's counsel's expense report reflecting these costs is attached hereto as **Exhibit D**.[3]

Accordingly, Plaintiff's counsel's request for a total of $15,294.42 is reasonable.

### III. Conclusion

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court lift the stay, approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, and that the Court retain jurisdiction to enforce the terms of the Parties' Agreement. The Parties have included a proposed order of dismissal as an exhibit to their Agreement, which is attached hereto for the Court's convenience as **Exhibit E**. Should the Court decline to endorse this order and issue its own from scratch, the Parties respectfully request that any such order provide that this action is dismissed with prejudice and that the Court is retaining jurisdiction for enforcement purposes.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Caitlin Duffy Esq.
*For the Firm*

Copies to:   Counsel for Defendants (via ECF)

---

[3] As of April 14, 2020, Plaintiff's expenses were $493.14. However, Plaintiff's counsel is not seeking the additional $29.24 in expenses.